**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **KATIE DIXON, on behalf of herself and all others similarly situated,** | |
| **JAIME GAONA, on behalf of himself and all others similarly situated,** | **Case No. _____** |
| **Plaintiffs,** | |
| **v.** | **JURY DEMAND** |
| **EDWARD D. JONES & CO., L.P., and THE EDWARD JONES FINANCIAL COMPANIES, L.L.L.P.,** | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

Plaintiff Katie Dixon ("Plaintiff Dixon"), and Plaintiff Jaime ("Jimmy") Gaona ("Plaintiff Gaona") in their individual capacities, and on behalf of similarly-situated Financial Advisors ("FAs"), by and through their attorneys hereby file this complaint to address the discriminatory practices perpetuated by Defendants, Edward D. Jones & Co. L.L.P. and The Jones Financial Companies, L.L.L.P. (collectively "Edward Jones," "Defendant," or "the Firm"). Based on their personal knowledge, and on information and belief, Plaintiffs allege as follows:

### INTRODUCTION

1.      A full two decades into the 21st century, discrimination remains endemic in the American workplace. And, like a virus, variant forms of employment discrimination continue to morph, adapt, and evolve in the modern economy. With their vast wealth and influence, leading American companies like Edward Jones are singularly positioned to eradicate workplace

discrimination. But toothless policies and lip-service to diversity and inclusion are not enough. Real change requires real action—action that Edward Jones, so far, has refused to take.

2.      Edward Jones knows it has a discrimination problem. The $34 million settlement reached with African American Financial Advisors in 2021 reflects this reality. But rather than take meaningful steps to end systemic bias, Edward Jones has instead resorted to cosmetic measures and public-facing initiatives designed to improve optics rather than bring about change. And by ignoring the root cause of discrimination and disguising its impact, Edward Jones is willfully allowing inequity to persist.

3.      Specifically, Edward Jones has a centralized, company-wide policy and practice of delegating critical compensation decisions to senior white male Financial Advisors. The known consequence of this practice is that female, non-white, and other diverse Financial Advisors are denied equal access to company clients and refused a fair opportunity for growth and advancement. By allowing rampant in-group bias to continue unabated, Edward Jones continues to deliberately discriminate against its women and other diverse Financial Advisor employees.

4.      Current Financial Advisor Katie Dixon and former Financial Advisor Jimmy Gaona both experienced the unfairness of Edward Jones' policies first-hand, and both repeatedly raised discrimination concerns to Edward Jones management to no avail. Having failed to bring about meaningful change working internally, Ms. Dixon and Mr. Gaona bring this lawsuit on behalf of women and other diverse Edward Jones Financial Advisors to remedy past discrimination and to bring about real and decisive change in the future.

## BACKGROUND

5.      Edward Jones is a Fortune 500 company that provides financial services to clients in the United States and Canada.  According to its website, Edward Jones currently manages $1.7 trillion in assets for over 7 million clients.

6.      Edward Jones employs over 19,225 Financial Advisors ("FAs") and has 14,667 branch offices in the United States.[1]

7.      Edward Jones is organized as a partnership and maintains centralized control through home office leadership that issues company-wide policies and procedures that ultimately apply to FAs and employees in Edward Jones offices nationwide.

8.      Due to long-standing systemic, company-wide discriminatory practices with respect to assignment and sharing of accounts, women and diverse FAs are denied the opportunity to work on accounts based on sex/gender and/or diversity status.  As a result, women and diverse FAs at Edward Jones are paid less than non-diverse and/or male FAs.

9.      Edward Jones is well-aware of this historical pattern and practice of systemic, company-wide pay discrimination against women and diverse FAs but has failed to take meaningful action to address and correct the problem.

10.     Plaintiff Dixon has worked at Edward Jones as an FA since 2017.  Ms. Dixon is a dedicated and diligent employee who has devoted substantial time to improvement of Edward Jones' corporate culture.   In 2020, Ms. Dixon disclosed to Edward Jones leadership that she identifies as LGBTQ+.

11.     Plaintiff Jimmy Gaona is a first-generation Mexican American whose parents immigrated to the United States from Mexico. Mr. Gaona worked as an FA at Edward Jones from

---

[1] The Jones Financial Companies, L.L.L.P. 10-K Report for fiscal year ended December 31, 2020.

November 2013 to January 2022.  Mr. Gaona was a dedicated and diligent employee who demonstrated commitment to improving Edward Jones' corporate culture by serving as a Regional Diversity & Inclusion Leader.

12.     Edward Jones repeatedly and discriminatorily denied Plaintiff Gaona and Plaintiff Dixon asset sharing opportunities and access to lucrative accounts, which negatively impacted their opportunity for commissions and overall compensation.

13.     On several occasions Plaintiff Gaona complained to Edward Jones leadership regarding the discrimination he and others experienced, most recently in an email dated December 10, 2021 to Managing Partner Penny Pennington.  Likewise, Plaintiff Dixon complained on several occasions to Edward Jones leadership and Human Resources regarding the discrimination she and others experienced.  To date, Edward Jones has taken no effective action to address and correct these long-standing, company-wide, and systemic discriminatory pay practices.

<u>**JURISDICTION AND VENUE**</u>

14.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343, in that this is a civil action arising under 42 U.S.C. § 1981, the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq*.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Defendants are headquartered in this District and regularly transact business within this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and across the United States, including the unlawful employment practices alleged in this Complaint.

## ADMINISTRATIVE PROCEEDINGS

16.     On or about March 9, 2022, Plaintiff Gaona filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") alleging race, color, national origin discrimination on behalf of himself and others similarly situated, and retaliatory constructive discharge, against Edward Jones.

17.     On or about March 9, 2022, Plaintiff Dixon filed a charge of discrimination with the EEOC, alleging sex/gender discrimination and sexual orientation discrimination on behalf of herself and others similarly situated, and retaliation, against Edward Jones.

## THE PARTIES

18.     Edward D. Jones & Co., L.P. is a wholly owned subsidiary of the Jones Financial Companies, L.L.L.P., a limited liability partnership headquartered in St. Louis, Missouri.  Edward Jones earned net revenue of approximately $10 billion for the fiscal year ended December 31, 2020, and it generated over $1.2 billion of income before its allocations to partners.

19.     Edward D. Jones & Co., L.P. is registered with the Securities and Exchange Commission as a broker-dealer and is a member organization of the Financial Industry Regulatory Authority ("FINRA"). As part of its brokerage, investment advisory and financial wealth planning services, Edward Jones employs over 19,225 registered brokers, or FAs, across the United States and Canada.

20.     From November 2013 until his constructive discharge in January 2022, Plaintiff Gaona was an "employee" at Edward Jones, as defined by 42 U.S.C. § 1981. Plaintiff Gaona currently resides in Olathe, Kansas.

21.     From 2017 through the present date, Plaintiff Dixon has worked at Edward Jones as an "employee" as defined by the Equal Pay Act. Plaintiff Dixon currently resides in Olathe,

Kansas.  Plaintiff Dixon has executed a Consent to Join form pursuant to 29 U.S.C. § 216(b), filed contemporaneously with this Complaint as Exhibit A.

## FACTUAL ALLEGATIONS

22.     Edward Jones operations are centralized at its home offices located in St. Louis, Missouri; Tempe, Arizona; and Mississauga, Canada.

23.     Edward Jones has in place company-wide policies, practices, and procedures that apply to all FAs working in the United States, including policies, practices, and procedures related to compensation and asset sharing opportunities.

24.     Edward Jones leadership responsible for compensation policy decisions is predominately white and male. Edward Jones is well-aware that women and people of color are significantly underrepresented in senior leadership, recently acknowledging that only 9% of its senior leadership are "people of color" and only 30% are women.[2]

25.     In order to maintain control and continuity of its client base, as well as to provide growth opportunity to less tenured FAs, Edward Jones has created asset and office sharing plans through which FAs transition assets to other FAs.  Under one such plan—the Goodknight Program ("Goodknight")—senior FAs are given authority to assign assets in their portfolios to less tenured FAs so that the senior FA has increased portfolio capacity to manage other, typically more lucrative assets.[3]

---

[2] Edward Jones 2021 Purpose, Inclusion, and Citizenship Report, Edward Jones, available at https://www.edwardjones.com/sites/default/files/acquiadam/2021-09/CAU-12493A-A_2021-PIC-report.pdf.
[3] Other asset and office sharing plans through which assigning FAs have such authority include Edward Jones' retirement transition and office backfill plans, all of which are colloquially referred to at Edward Jones as "Goodknight."  As such, references to "Goodknight" within this Complaint encompass all of Edward Jones' asset and office sharing plans.

26.     The majority of the senior FAs who share and assign accounts through Goodknight are white men primarily of United States national origin or ancestry. Edward Jones gives these senior FAs essentially complete discretion to assign and share assets through Goodknight with other FAs of their choice.

27.     Edward Jones determines compensation for its FAs based principally on the clients and assets under management the FAs service. Generally speaking, the quality and quantity of assets under each FA's management impacts the FA's compensation. Thus, through the Goodknight program, Edward Jones has all but delegated its compensation decisions for FAs to a group of overwhelmingly white men primarily of United States national origin or ancestry. This has the predictable result of concentrating assets under management and the corresponding compensation in the hands of the next generation of white male FAs to the exclusion of female and more diverse FAs.

### *Plaintiff Dixon's Experience at Edward Jones*

28.     Plaintiff Dixon began working at Edward Jones as a Financial Advisor in August 2017.

29.     Plaintiff Dixon is a woman who identifies as pansexual.  Plaintiff Dixon disclosed to leadership that she identifies as LGBTQ+ in September 2020.

30.     In or around 2017, Plaintiff Dixon began to participate in Goodknight.

31.     Like Plaintiff Gaona, Plaintiff Dixon began to suspect, early in her participation in Goodknight, that she did not benefit from the program to the extent that similarly situated white male employees and non-LGBTQ+ employees benefitted.

32.     In the late Summer/early Fall of 2020, Plaintiff Dixon informed Edward Jones leadership of her intention to run in the November 3, 2020 election for the District 49 seat in the Kansas House of Representatives.

33.     Plaintiff Dixon's campaign platform included advocacy for LGBTQ+ rights, and she openly discussed her own sexual orientation during her campaign.

34.     Plaintiff Dixon was endorsed by the Victory Fund, an organization devoted to increasing the number of openly LGBTQ+ elected officials at all levels of government and ensuring those officials reflect the diversity of their constituents.[4]

35.     In or around September 2020, Edward Jones leadership demanded that Plaintiff Dixon withdraw from the November 2020 election.  Edward Jones leadership further indicated that Plaintiff Dixon would be required to choose between her continued employment at Edward Jones and serving as a Kansas Representative if elected.

36.     While Edward Jones leadership made such demands and threats to Plaintiff Dixon, it allowed a male Financial Advisor to run for and serve as an Indiana State Senator.

37.     At that time, Plaintiff Dixon complained to Edward Jones leadership that she believed the company's position regarding her public office pursuit was discriminatory.

38.     Plaintiff Dixon nevertheless opted to pursue public office in response to which Edward Jones prohibited her from serving in a leadership position for two years.

39.     In May 2021, Plaintiff Dixon submitted a complaint to the Edward Jones suggestion box in which she raised concerns regarding pay inequality as well as her observations that Edward Jones' claimed commitment to diversity and inclusion is "all talk and no action."

---

[4] *See* https://victoryfund.org.

40.     Beyond a few conference calls with Diversity and Inclusion leadership, no further action was taken in response to Plaintiff Dixon's concerns.

41.     On or about June 8, 2021, Plaintiff Dixon participated in a "What Makes it Great" discussion with a Regional Diversity and Inclusion Leader and several Kansas City LGBTQ+ community leaders.  During that meeting, the D&I Leader stated to the effect that he understood nonbinary people because Black and White people have babies that are mixed race.

42.     Plaintiff Dixon reported the D&I Leader's statement to her Area Leader, who seemed disinterested and took no action in response to Plaintiff Dixon's knowledge.

43.     On or about December 13, 2021, Plaintiff Dixon (as well as Plaintiff Gaona) participated in an Asset and Office Sharing call.  During this call, leadership acknowledged they were aware that less senior FAs had concerns regarding inequities with respect to asset distribution.

44.     Plaintiff Dixon raised concerns during the call, including that diverse FAs experience barriers when attempting to connect with clients and co-workers who are not diverse. Plaintiff Dixon requested that steps be taken to assist the diverse FAs overcome these barriers. Plaintiff Dixon's request was ignored.

45.     During the December 13 call, a senior FA stated that the 10% Goodknight diversity incentive was meaningless to him and not a factor he considered when sharing assets.

46.     On February 4, 2022, Plaintiff Dixon posted on a private Facebook page for women Edward Jones FAs regarding her anxiety related to Summer Regional Meetings because of the challenges it presents for single women with children and non-traditional families.

47.     Plaintiff Dixon's post generated over 100 comments from other women FAs.  Many of these women thanked Plaintiff Dixon for her post and echoed her concerns, including one

woman FA who shared that her FA packet was handed to her husband instead of her at the prior in-person regional meeting.

48.     Another woman FA commented that the social gatherings organized for FA spouses at the Summer Regional Meetings, until recently, were referred to as "Wives Meetings."

49.     The same day Plaintiff Dixon posted, her Regional D&I Leader called and criticized Plaintiff Dixon for the content of her Facebook post, told her she hurt the feelings of the regional meeting organizers, told Plaintiff Dixon to stop complaining, and informed Plaintiff Dixon that she would not be considered for any future leadership opportunities.

50.     On February 10, 2022, Plaintiff Dixon's Regional Leader called her to request a meeting regarding her Facebook post.  During their telephone discussion, the Regional Leader criticized her Facebook post, warned her about the importance of perception, and told her to stop complaining.

51.     To date, Edward Jones has taken no meaningful action in response to any of the concerns raised by Plaintiff Dixon.

52.     Upon information and belief, Plaintiff Dixon's experience at Edward Jones is similar to the experience of other women and/or diverse Financial Advisors.

### *Plaintiff Gaona's Experience at Edward Jones*

53.     Plaintiff Gaona is a first-generation Mexican American who participated in Goodknight during his employment at Edward Jones.

54.     Early in his employment, Plaintiff Gaona began to suspect that he did not benefit from Goodknight to the extent similarly situated white employees of United States national origin or ancestry benefitted.  Rather than complain at that time, Plaintiff Gaona chose to work hard and do everything he could to overcome this potential obstacle to his success at Edward Jones.

55.     In or around 2016, Plaintiff Gaona proposed to leadership that Edward Jones partner with the Hispanic Chamber of Commerce of Greater Kansas City to recruit Hispanic employees, connect with the Hispanic community, and grow Edward Jones' business.  Edward Jones leadership concluded Plaintiff Gaona's proposal was inconsistent with Edward Jones' goals and rejected it despite the fact Edward Jones historically partners with businesses and organizations in connection with other, apparently higher priority, firm goals.

56.     In 2018, Plaintiff Gaona agreed to serve as the Region 247 Diversity and Inclusion Leader.

57.     As a Regional Diversity and Inclusion Leader, Plaintiff Gaona devoted substantial time and energy in hopes of effecting long-overdue organizational change with respect to diversity and inclusion. Among other things, Plaintiff Gaona conducted monthly lunch-and-learn meetings and traveled to every branch office in Region 247 to discuss issues and topics related to diversity and inclusion.

58.     During the protests following the murder of George Floyd in the late Spring/Summer of 2020, Plaintiff Gaona sought to acknowledge the tumultuous time in America by proposing to send a unifying, empathic email to his region from Diversity and Inclusion leadership. Leadership instructed Plaintiff Gaona not to send such an email because some Edward Jones employees responded to prior similar emails with racist statements and sentiments.  In other words, Edward Jones leadership chose to stifle Plaintiff Gaona rather than address the known racism in its corporate culture.

59.     During his time as Diversity and Inclusion Leader, Plaintiff Gaona had access to and was required to review monthly reports that reflected asset sharing through Goodknight.  The

reports to which he had access confirmed Plaintiff Gaona's concerns that Goodknight is discriminatory.

60.     The data to which Plaintiff Gaona had access reflects that Goodknight overwhelmingly favors white, male FAs primarily of US national origin or ancestry.

61.     The discrimination inherent in and perpetuated by Goodknight is the result of in group bias where white, male senior FAs primarily of US national origin or ancestry choosing to share their assets with other white, male FAs primarily of US national origin or ancestry.

62.     In or around 2017, Edward Jones instituted a purported incentive program through which senior FAs participating in Goodknight received an additional 10% payout on accounts assigned to diverse and/or women FAs.  However, in Plaintiff Gaona's experience this program was not effectively communicated to the senior FAs. In fact, Plaintiff Gaona personally spoke to several senior FAs in Region 247 who were unaware of the 10% incentive.

63.     Plaintiff Gaona raised concerns regarding discrimination with Edward Jones leadership on several occasions during his employment, most recently in an email to Managing Partner Penny Pennington on December 10, 2021.

64.     Despite Plaintiff Gaona's complaints, Edward Jones has taken no meaningful action to address and correct long-standing company-wide discriminatory pay practices.

65.     After attempting to make a positive difference as a Diversity and Inclusion Leader and raising concerns regarding systemic discrimination repeatedly to no avail, Plaintiff Gaona felt he had no choice but to end his employment at Edward Jones on January 10, 2022.

66.     But for his race, Plaintiff Gaona would have benefited from the Goodknight program to the extent similarly situated white employees of United States national origin or ancestry benefitted.

67.     Upon information and belief, Plaintiff Gaona's experience at Edward Jones is similar to the experience of other diverse Financial Advisors.

### *Edward Jones has Willfully Failed to Take Meaningful Action to Address and Correct Historic and Systemic Discrimination Against Diverse and Women FAs*

68.     Edward Jones opened its first office in 1922.[5]

69.     Not until 1974–52 years later–did Edward Jones hire a woman Financial Advisor.[6]

70.     As of 2021–nearly 100 years after the company was founded–only 21% of Edward Jones FAs are women and 8% are people of color.[7]

71.     Prior to 2007, Edward Jones had no Diversity, Equity, and Inclusion efforts in place.

72.     On May 24, 2018, African American FA Wayne Bland filed a complaint on behalf of himself and other African American FAs alleging systemic and intentional race discrimination at Edward Jones with respect to compensation and other terms of employment.[8]

73.     Upon information and belief, Edward Jones became aware of Bland's claims on behalf of himself and other African American FAs in 2016 when Bland filed a charge of discrimination with the EEOC.

74.     Despite the claims in *Bland* and settlement in favor of current and former African American FAs who suffered discrimination, Edward Jones has since failed to take meaningful action to end such centralized, systemic, company-wide discrimination.

---

[5] Edward Jones 2021 Purpose, Inclusion and Citizenship Report, p. 8.
[6] *Id.*
[7] *Id.* p. 11.
[8] *See Wayne Bland, Felicia Slaton-Young, and Nyisha Bell, et al. v. Edward D. Jones & Co. L.P.,* No. 18-cv-3673 (N.D. Ill.).

75.     Edward Jones is likewise well-aware of the centralized, systemic, company-wide discriminatory employment practices to which Plaintiffs Dixon and Gaona, and the classes they seek to represent, have been and continue to be subjected.

76.     Edward Jones has been aware of all such centralized, systemic, company-wide discriminatory practices for many years and has willfully failed to effectively address or correct the issue.

77.     Edward Jones is specifically aware of the substantial and systemic discriminatory impact of Goodknight but has willfully opted not to take meaningful, effective action to correct the same.

78.     Instead, Edward Jones continues to delegate asset sharing that directly impacts compensation of other FAs to its primarily non-diverse, male senior FAs. Upon information and belief, such asset sharing is not managed, audited or otherwise scrutinized to protect diverse and female FAs from discrimination.

79.     Edward Jones is aware that superficial corrective efforts such as the 10% Goodknight incentive are ineffective and engages in them only for reasons related to public relations and liability.

80.     While it continues to delegate asset sharing decisions to its primarily white male senior advisors knowing the discriminatory impact of the same, Edward Jones has engaged in purported diversity and inclusion efforts that are nothing beyond a thinly veiled public relations campaign in response to *Bland*.

81.     In 2021, Edward Jones released a 36-page Purpose, Inclusion, and Citizenship Report that is available on its public website at https://www.edwardjones.com/us-en/why-edward-jones/about-us/corporate-citizenship.

82.     Edward Jones touts its claimed "revitalized" efforts to address diversity and inclusion in the report.

83.     However, the report does not reference any specific policy, practice, or procedural changes to correct FA pay discrimination.

84.     Page 12 of the report states, "In 2020, we analyzed pay for our U.S. home offices to assess equal work across race and ethnicity, gender and gender equality, sexual orientation and military status."  The report goes on to state, "[t]he results of that analysis were encouraging with less than 2% of associates identified as having any kind of gap in pay for work equal to their peers. These identified gaps have been addressed to ensure equal pay for equal work."

85.     Page 35 of the report states that Edward Jones had approximately 50,000 associates at the time of the report, 17,249 of whom were branch office administrators (BOAs) and 18,855 were FAs.   Those 36,104 FAs and BOAs are not home office employees; Thus, the pay equity analysis appears to have been conducted only on a portion of the remaining 13,896 employees who work in one of Edward Jones' US home offices of St. Louis or Tempe. In other words, the pay equity study Edward Jones publicly touts appears to have been conducted on less than 27% of its employees, none of whom are FAs.

86.     To date, Edward Jones has not publicly referenced any such pay analysis specifically related to FA compensation.

87.     Edward Jones is likewise well-aware of, and has failed to correct, the lack of diverse representation firmwide. Systemic racism and long-standing, stereotypical biases perpetuate disparities in compensation, result in disparate impacts relative to similarly-situated employees who are white, male, and primarily of United States ancestry, and prevent FAs in protected classes from advancing professionally regardless of their skill, ability, or positive contributions.

88.     Under Edward Jones' compensation system, FAs "are generally compensated on a commission basis and may, in addition, be entitled to bonus compensation based on their respective branch profitability and the profitability of the Partnership."[9]

89.     Edward Jones' recruiting webpage states, "how much you earn is determined by you – your business, plan, your drive and how deeply you serve your clients."[10] Edward Jones makes this representation to prospective FAs knowing that their long-standing compensation policies and procedures discriminate against women and other non-diverse FAs.

90.     Edward Jones has demonstrated an established pattern of engaging in performative activism and superficial actions to create and/or maintain public perception as an inclusive workplace while it continues to turn a blind eye to discrimination.

## COLLECTIVE ACTION ALLEGATIONS UNDER EQUAL PAY ACT

91.     Edward Jones engaged in systemic gender discrimination against its female employees. Edward Jones caused, contributed to, and perpetuated gender-based pay disparities through common policies, practices, and procedures, including but not limited to common compensation and performance management policies and centralized decision-making.

92.     Plaintiff Dixon brings this claim for violations of the Equal Pay Act as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all members of the Equal Pay Act Collective ("EPA Collective"). The EPA Collective is defined as follows:  All current and former female FAs employed by Edward Jones from three years prior to the filing of this Complaint to the present.

---

[9]     Edward     Jones,     10-K     Report,     SEC     filing,     available     at https://www.sec.gov/Archives/edgar/data/815917/000119312512143759/d308263d10k.htm.
[10] *See* https://careers.edwardjones.com/career-areas/experienced-financial-advisor/compensation-and-benefits/.

93.     Plaintiff Dixon seeks to represent all female FAs, as described above, who were paid less than male employees for doing similar work.  The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

94.     Questions of law and fact common to the EPA Collective and Plaintiff Dixon include but are not limited to the following:

> a.    Whether Edward Jones unlawfully failed and continues to unlawfully fail to compensate female FAs at a level commensurate with comparable male employees;
>
> b.    Whether Edward Jones' policy, practice, or procedure of failing to compensate female FAs at a level commensurate with comparable male employees violates the applicable provisions of the Equal Pay Act; and
>
> c.     Whether Edward Jones' failure to compensate female FAs at a level commensurate with comparable male employees was willful within the meaning of the Equal Pay Act.

95.     Plaintiff Dixon's Equal Pay Act claim may be maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because Plaintiff Dixon is similarly situated to the female employees described in the EPA Collective.  Plaintiff Dixon's claims are similar to the claims asserted by the EPA Collective.

96.     Plaintiff Dixon and the EPA Collective are (a) similarly situated; and (b) are subject to Edward Jones' common compensation policies, practices and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate female FAs at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles, and positions.

## SECTION 1981 CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

97.     Plaintiff Gaona brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a protected class of employees who work or worked for Defendant Edward Jones as FAs and who were subjected to discrimination by Defendant due to their race, in violation of 42 U.S.C. § 1981. All requirements of class certification are met by the proposed classes. The § 1981 Class is defined as follows: all current and former non-white FAs employed by Edward Jones from four years of the filing of this Complaint to the present.

98.     The class of non-white FAs and former FAs is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

99.     There are questions of law and fact common to the class, and those questions can and should and be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

100.    The claims alleged by Plaintiff Gaona are typical of the claims of the class members. Fed. R. Civ. P. 23(a)(3).

101.    Plaintiff Gaona will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

102.    The issues of determining liability and equitable relief, among other issues, are appropriate for issue certification under Rule 23(c)(4), as are the other common issues.

103.    The proposed class also meets the requirements for certification under Rule 23(b)(2) and Rule 23(b)(3). The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I

### Violation of the Fair Labor Standards Act OF 1938, as Amended by the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, *et seq.*, DENIAL OF EQUAL PAY FOR EQUAL WORK

**(Asserted by Plaintiff Dixon and the EPA Collective Against Defendant)**

104.    Plaintiff Dixon realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

105.    This Count is brought on behalf of Plaintiff Dixon and other similarly situated women FAs against Defendant Edward Jones (the "EPA Collective").

106.    Edward Jones is an employer of Plaintiff Dixon and the members of the EPA Collective within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, *et seq.*, as amended by the Equal Pay Act of 1963.

107.    The Edward Jones enterprise constitutes a single establishment within the meaning of 29 U.S.C. § 206(d).

108.    Edward Jones manages its business from its central administrative unit that exercises company-wide discretion and power over issues like hiring and firing, setting wages, assigning location of employment, and training.

109.    There are no distinctions between the job responsibilities of FAs working in any Edward Jones office.

110.    Edward Jones uses common, company-wide policies and procedures that set and otherwise impact the wages of FAs throughout the country.

111.    As relevant here, the Goodknight policy is a central, company-wide policy that does not vary from FA to FA. It is implemented, managed, and maintained by Edward Jones from its central administrative unit and applies with equal force to FAs around the country.

112.    Edward Jones has discriminated against Plaintiff Dixon and the members of the EPA Collective by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

113.    Edward Jones discriminated against Plaintiff Dixon and the members of the EPA Collective by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries, commissions, and commissions opportunities in violation of the Equal Pay Act.

114.    The differential in pay between Plaintiff Dixon and the EPA Collective and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or any other legitimate factor.

115.    Edward Jones caused, attempted to cause, contributed to, and caused the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

116.    Edward Jones knowingly and intentionally paid Plaintiff Dixon and the members of the EPA Collective less than similarly situated male employees in violation of the Equal Pay Act. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C § 255(a). Because Edward Jones has willfully violated the Equal Pay Act, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255(a).

117.    As a result of Edward Jones' unlawful conduct, Plaintiff Dixon as well as the members of the EPA Collective suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well as non-economic damages.

118.    Plaintiff Dixon and the EPA Collective are entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### PRAYER FOR RELIEF ON COUNT I

WHEREFORE, on behalf of herself and the EPA Collective she seeks to represent, Plaintiff Dixon respectfully requests this Court:

a.   Certify Count II as a collective action on behalf of the proposed EPA Collective; and

i.   Promptly issue notice pursuant to 29 U.S.C § 216(b) to all similarly situated members of the EPA Collective, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely Equal Protection Act claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and

ii.   Toll the statute of limitations on the claims of all members of the EPA Collective from the date the original complaint was filed until the members of the EPA Collective are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their rights to opt-in as Plaintiffs;

b.   Designate Plaintiff Dixon as Collective Representative and designate Plaintiff Dixon's counsel of record as the EPA Collective Counsel;

c.   Declare that Edward Jones' acts, conduct, policies and practices are unlawful and violate the EPA;

d.  Declare that Edward Jones engages in a pattern and practice of discrimination against women FAs and employs policies and practices that have an unlawful impact on women FAs;

e.  Declare that Edward Jones' actions were willful;

f.  Order Edward Jones to reform its discriminatory policies and practices;

g.  Award Plaintiff Dixon and all others similarly situated compensatory damages, including back pay and a sum to compensate Plaintiff Dixon and the EPA Collective for any increased tax liability on a lump sum award;

h.  Award liquidated damages to Plaintiff Dixon and the EPA Collective in the maximum amount available under the EPA;

i.  Award Plaintiff Dixon and the EPA Collective prejudgment and post judgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

j.  Award Plaintiff Dixon and the EPA Collective such other equitable, injunctive, and legal relief as this Court deems just and proper and end the discrimination and fairly compensate Plaintiff Dixon.

## COUNT II

### Violation of 42 U.S.C. § 1981
### RACE DISCRIMINATION

**(Asserted by Plaintiff Gaona and the Section 1981 Class Against Defendant)**

119.    Plaintiff Gaona realleges and incorporates by reference each and every allegation in the previous paragraphs as though fully set forth herein.

120.    This Count is brought on behalf of Plaintiff Gaona and other similarly situated non-white FAs (the "Section 1981 Class") against Defendant Edward Jones.

121.    Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, as well as all benefits, privileges, terms, and conditions of the contractual relationship.

122.    Edward Jones maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic discrimination against Plaintiff Gaona and the Section 1981 Class that constitutes illegal intentional race discrimination in violation of 42 U.S.C. § 1981.

123.    Edward Jones' actions were malicious and/or recklessly indifferent.

124.    As a result of Edward Jones' unlawful conduct, Plaintiff Gaona and the Section 1981 Class suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial losses, as well as non-economic damages. But for Edward Jones' unlawful conduct, Plaintiff Gaona and the Section 1981 class would not have suffered and would not continue to suffer these losses.

## PRAYER FOR RELIEF ON COUNT II

WHEREFORE, on behalf of himself and the Section 1981 Class he seeks to represent, Plaintiff Gaona respectfully requests this Court:

a.    Certify Count I as a class action pursuant to Federal Rule of Civil Procedure 23;

b.    Designate Plaintiff Gaona as Class Representative and designate Plaintiff Gaona's counsel of record as Section 1981 Class Counsel;

c.    Declare that Edward Jones' acts, conduct, policies and practices are unlawful and violate 42 U.S.C. § 1981;

d.  Declare that Edward Jones engages in a pattern and practice of racial discrimination against non-white FAs and employs policies and practices that have an unlawful impact on non-white FAs;

e.  Declare the discrimination in which Edward Jones engaged was malicious and/or recklessly indifferent;

f.  Order Edward Jones to reform its discriminatory policies and practices;

g.  Award Plaintiff Gaona and the Section 1981 Class the value of all compensation and benefits lost and that they will lose in the future as a result of Edward Jones' unlawful conduct;

h.  Award Plaintiff Gaona and the Section 1981 Class compensatory and punitive damages;

i.  Award Plaintiff Gaona and the Section 1981 Class prejudgment and post judgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

j.  Award Plaintiff Gaona and the Section 1981 Class such other equitable, injunctive, and legal relief as this Court deems just and proper and end the discrimination and fairly compensate Plaintiff Gaona.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: March 9, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *George A. Hanson*
George A. Hanson, #43450 (MO)
Bria Davis, #71516 (MO)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:     816-714-7101
hanson@stuevesiegel.com
davis@stuevesiegel.com

AND

**HF LAW FIRM LLC**

Christi J. Hilker, #53523 (MO) (*PHV forthcoming*)
Amy M. Fowler, #52359 (MO) (*PHV forthcoming*)
3101 W. 86th St.
Leawood, Kansas 66206
Telephone:    (816)739-0107
Facsimile:     (913)426-9181
christi@hflawfirmllc.com
amy@hflawfirmllc.com

*Attorneys for Plaintiffs*