UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATIE DIXON, et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | )   Case No. 4:22-cv-00284-SEP |
| EDWARD D. JONES & CO., L.P., et al., | ) ) ) |
|     Defendants. | ) |

### MEMORANDUM AND ORDER

Before the Court is a motion to dismiss filed by Defendants Edward D. Jones & Co., L.P., and The Jones Financial Companies, L.L.L.P ("Defendants"). Doc. [31]. The motion is fully briefed and ready for disposition. *See* Docs. [32], [42], [44]. For the reasons set forth below, the motion is denied.

### BACKGROUND

Edward Jones is a Fortune 500 company that provides financial services to clients in the United States and Canada. Doc. [27] ¶ 10. Edward Jones hires financial advisors (FAs) to manage its clients' accounts and assets. *Id.* ¶ 5.

To maintain its client base, Edward Jones created an asset and office sharing plan—the Goodknight program—as a way for FAs to transition Edward Jones's clients' assets to other FAs. *Id.* ¶ 30. Under that plan, senior FAs can assign clients assets to more junior FAs to increase their portfolio capacity to manage other, more lucrative assets. *Id.* The plan allows senior FAs to maintain a "tail" interest in the transferred assets to incentivize them to move assets to more junior FAs. *Id.* For purposes of the Amended Complaint, Goodknight also refers to Edward Jones's other asset and office sharing plans, including its retirement transition and office backfill plans. *Id.* Allegedly, FAs who receive assets through the Goodknight program did not actively bring those assets into the firm or receive them based on discretion, skill, or production. *Id.* ¶ 36.

Edward Jones determines an FA's compensation principally based on the value of its clients' assets under that FA's management. *Id.* ¶ 32. Because more junior FAs depend on transfers from senior FAs for their accounts, lack of access to Goodknight transfers in a FA's

1

career can impair the FA's income and advancement opportunity. *Id.* ¶ 33. Thus, an asset transferred to an FA under the Goodknight program amounts to wages based on either the account service fee or a percentage-based fee. *Id.* ¶ 34.

Plaintiff Katie Dixon, a female who identifies as pansexual, was hired by Edward Jones as an FA in 2017. *Id.* ¶ 41-42. In 2017, she began to participate in the Goodknight program. *Id.* ¶ 43. Dixon claims that during her entire employment with Edward Jones, senior white male FAs have used the Goodknight program to transfer Edward Jones' clients' assets to more junior white male FAs. *Id.* ¶ 44. According to Dixon, tens of millions of dollars in Goodknight transfers have occurred in the Kansas City area during her employment, for which she should have been eligible, but they have disproportionately gone to white male FAs with equal or less experience. *Id.* ¶ 44-45.

In the late summer of 2020, Dixon informed Edward Jones leadership of her intention to run in the November 3, 2020, election for the District 49 seat in the Kansas House of Representatives. *Id.* ¶ 46. Her campaign platform included advocacy for LGBTQ+ rights, and she openly discussed her own sexual orientation during her campaign. *Id.* ¶ 47. In September 2020, Dixon claims that Edward Jones leadership demanded that she withdraw from the election. *Id.* ¶ 49. She alleges that she was told she would be required to choose between her continued employment at Edward Jones and serving as a representative. *Id.* She claims that the leadership threatened her despite allowing a male FA to run for and serve as a state senator elsewhere. *Id.* ¶ 50. She complained to Edward Jones leadership that she believed the company's position was discriminatory. *Id.* ¶ 52. When she opted to pursue public office, Edward Jones prohibited her from serving in a leadership position for two years. *Id.* ¶ 51-52.

On February 4, 2022, Dixon posted on a private Facebook page for female Edward Jones FAs raising concerns about the Summer Regional Meetings because of the challenges it presents for single women with children and non-traditional families. *Id.* ¶ 60. That same day, her regional Diversity and Inclusion Leader called her and criticized her for the content of that Facebook post. *Id.* ¶ 63. The leader told her that she had hurt the feelings of the regional meeting and informed her that she would not be considered for any future leadership opportunities. *Id.* During that call, and in a subsequent meeting, Dixon claims that she was told to stop complaining. *Id.* ¶ 63-64. Dixon claims that Edward Jones has taken no meaningful

action in response to concerns she raised about pay inequality and other instances of alleged discrimination. *Id.* ¶ 53-58, 65.

Plaintiff Jaime Gaona, a Mexican American male, formerly worked for Edward Jones as a financial advisor. *Id.* ¶ 68. In 2014, Gaona received his one and only Goodknight transfer of approximately $9,000,000. *Id.* ¶ 69. He claims that transfer was not as valuable as those which his white male colleagues received, and that it was even less valuable because the transferred assets were less lucrative accounts. Gaona also claims that a white male senior FA unilaterally took $200,000 to $300,000 in assets from that transfer. *Id.* In 2018, Gaona agreed to serve as the Region 247 Diversity and Inclusion Leader. *Id.* ¶ 71. In that position, Gaona claims to have reviewed monthly reports reflecting asset sharing through Goodknight. *Id.* ¶ 74. According to Gaona, the data from those reports reflected that white, male senior FAs primarily of United States national origin or ancestry chose to share their assets with other white, male FAs primarily of United States national origin or ancestry. *Id.* ¶ 76. Gaona alleges that he raised concerns about discrimination with Edward Jones leadership on several occasions during his employment to no avail. *Id.* ¶ 78. He claims that he had no choice but to end his employment at Edward Jones on January 10, 2022. *Id.* ¶ 80.

Plaintiffs filed this action on April 25, 2022. Doc. [1]. The Amended Complaint brings five claims under federal antidiscrimination laws. Doc. [27]. Count I alleges gender-based wage discrimination under the Equal Pay Act (EPA) and Fair Labor Standards Act (FLSA) on behalf of Dixon and other female financial advisors. *Id.* ¶¶ 130-44. Count II alleges race-based discrimination under 42 U.S.C. § 1981 on behalf of Gaona and other non-white financial advisors, excluding African American financial advisors. *Id.* ¶¶ 145-50. Count III alleges discrimination on the basis of race, color, and national origin under Title VII on behalf of Gaona and other non-white financial advisors, excluding African American financial advisors. *Id.* ¶¶ 151-60. Count IV alleges gender discrimination under Title VII on behalf of Dixon and other female financial advisors. *Id.* ¶¶ 161-70. And Count V alleges sexual orientation discrimination under Title VII on behalf of Dixon and other financial advisors of minority sexual orientations. *Id.* ¶¶ 171-80.

## Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice

pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiffs to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that standard and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The requirement of facial plausibility means the factual content of the plaintiffs' allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In civil rights actions, a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. Therefore, "a Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

## DISCUSSION

### I.     Equal Pay Act

The Equal Pay Act prohibits an employer from "paying wages to employees . . . at a rate less than the rate [paid] to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," except under a system that depends on merit, seniority, quality or quantity of production, or another factor other than sex. 29 U.S.C. § 206(d)(1). For purposes of the EPA, the term "wages" includes "all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name. Fringe benefits are deemed to be remuneration for employment." 29 C.F.R. § 1620.10.

Defendants argue that Plaintiffs fail to sufficiently allege that Edward Jones pays male and female FAs at different rates or that Plaintiff Dixon, in particular, was paid less than any

4

male FA who performed equal work. Doc. [32] at 17-19. The Court disagrees. In the Amended Complaint, Plaintiffs allege that:

- "There are no distinctions between the job responsibilities of FAs working in any Edward Jones office," Doc. [27] ¶ 135;
- "Edward Jones determines compensation for its FAs based principally on the value of Edward Jones' clients' assets that the FAs service," *id.* ¶ 32,
- "[W]hen an asset is transferred under the Goodknight program to an FA, that transfer immediately equates to wages based on either the account service fee or a percentage-based fee," *id.* ¶ 34;
- "The receiving FA did not have to earn the client's business for Edward Jones," *id.*;
- "As of April 2020, the top 10 recipients of Goodknight transfers in Plaintiffs' region of the Kansas City area . . . were all white men." *id.* ¶ 35;
- "Each of these white male FAs earned more than Plaintiff[] Dixon . . . based on their Goodknight transfers alone," *id.*;
- Each of these men had approximately the same tenure at Edward Jones as Plaintiff Dixon . . . ," *id.*
- "These transfers represented tens of thousands of dollars in wages annually . . . ," *id.* ¶ 36;
- "[T]hese are not client assets the receiving FAs actively brought into the firm or that the receiving FAs received through any exercise of discretion, skill, or production. . . .," *id.*;
- "Plaintiff Dixon is aware that, while she was participating in Goodknight and technically able to receive asset transfers, less or comparably experienced white male FAs have received such transfers. These transfers represented millions of dollars in assets and thousands (if not tens of thousands) of dollars in wages annually to the white male FAs," *id.* ¶ 45.

Assuming those allegations to be true and drawing every reasonable inference in favor of Plaintiff Dixon, she has successfully stated a claim that she was paid a lower wage than male counterparts for doing the same job. *See, e.g.*, *Keziah v. W.M. Brown & Son, Inc.*, 888 F.2d 322, 325 (4th Cir. 1989) (plaintiff showed she "was paid a lower wage for performing the exact same job" as a male colleague based on evidence that an allegedly commission-based pay differential was in fact paid "regardless of the actual commissions earned," and denying summary judgment to company based in part on evidence that the salary-setting process was subjective).

Defendants also maintain that the Amended Complaint makes clear that Defendants' compensation formula qualifies as a "system which measures earnings by quantity or quality of production," and thus Plaintiffs' own allegations refute Dixon's EPA claim. Doc. [32] at 17, 20-

5

21. That argument also fails. As Plaintiff points out, Defendants mischaracterize the Complaint. *See* Doc. [42] at 9. They also invite the Court to beg the central question posed by Count I—i.e., whether "assets under management" are, in fact, an "objectively verifiable criteri[on]" on which to base compensation, Doc. [32] at 21, or those assets are allocated in a way that improperly favors male employees—in favor of Defendants. Because the Court is bound at this stage to draw every reasonable inference in favor of Plaintiffs, it must decline that invitation. Defendants point to no basis for dismissal of Count I.

II.  **Title VII**

   **A. Plaintiffs have exhausted their administrative remedies.**

Defendants move to dismiss Plaintiffs' Title VII claims on the grounds that Plaintiffs have failed to exhaust their administrative remedies for two reasons: (1) the allegations in the Complaint are outside the scope of both Dixon's and Gaona's EEOC charges, and (2) Plaintiffs' claims are untimely because they challenge employment actions that occurred more than 300 days before they filed their charges. Both exhaustion arguments fail.

"To determine whether an allegedly discriminatory action falls within the scope of a claim, the administrative complaint must be construed liberally in order to further the remedial purposes of applicable legislation." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)). However, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. . . ." *Id.* (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)). Therefore, "[t]he breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Id.* (quoting *Stuart v. Gen. Motors*, 217 F.3d 621, 630-31 (8th Cir. 2000)).

   *i. Plaintiffs have exhausted their disparate impact claims.*

Defendants contend that Plaintiffs' disparate impact claims exceed the scope of their respective EEOC charges of discrimination. Doc. [32] at 21-22. On the contrary, Plaintiffs' EEOC charges both cite the "substantial discriminatory impact of the Goodknight program," which was implemented "[i]n order to maintain control and continuity of its client base, as well as to provide growth and opportunity to less tenured FAs," but Plaintiffs "did not benefit from . .

6

. to the extent that similarly situated male employees and non-LGBTQ+ employees." *See* Docs. [32-2], [32-3]. Thus, the charges identify a neutral practice that resulted in unintended but adverse consequences to the Plaintiffs' respective protected classes, making this case unlike any cited by Defendants. *See* Doc. [32] at 22. Any EEOC investigation resulting from Plaintiffs' charges "reasonably could have been expected" to include inquiry into whether the Goodknight program had a disparate impact on non-white and/or non-male employees. *Dorsey*, 278 F.3d at 838. Therefore, Plaintiffs' EEOC charges did exhaust their disparate impact claims.

        *ii.*    *Plaintiffs have exhausted their claims based on discriminatory compensation.*

Defendants next argue that every allegedly discriminatory asset transfer made through the Goodknight program must be treated as a "separate and completed act" akin to termination, denial of transfer, or failure to hire, such that Plaintiffs' failure to enumerate each transfer in their EEOC charges means that they cannot now sue on the basis of any such transfer. Doc. [32] at 23. Defendants provide no example of any court treating an asset transfer or similar transaction as a "separate and completed act" that requires independent exhaustion. *See* Docs. [32] at 23; [44] at 14. And Eighth Circuit precedent advises that a Title VII claim alleging a discriminatory differential in compensation should be treated as if "each allegedly discriminatory paycheck represented a new Title VII violation." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 989 (8th Cir. 2003); *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 743 (8th Cir. 1980) ("The practice of paying discriminatorily unequal pay occurs not only when an employer sets pay levels, but as long as the discriminatory differential continues."). Under the circumstances, whether Plaintiff can defeat a statute of limitations defense is a question better suited for determination on summary judgment, with the benefit of a full record. *See U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1345 (E.D. Mo. 1996) (whether claim was barred by statute of limitations could not be resolved on motion to dismiss due to "obvious factual dispute"); *see also Tracy v. Telemetrix, Inc.*, 2016 WL 3383229, at *1 (D. Neb. May 3, 2016) (collecting cases). Therefore, the Court rejects Defendants' argument that Plaintiffs failed to timely exhaust their Title VII claims based on discriminatory compensation.[1]

---

[1] Defendants also object to certain other allegations in the Complaint on the grounds that they were not mentioned in Plaintiffs' EEOC charges. *See* Docs. [32] at 22-23; [44] at 11-12 (discussing Plaintiffs' allegations regarding "office or territory assignments, training, partnerships, sales support, or business opportunities," *inter alia*). An EEOC charge need not include every allegation that a plaintiff later

### B. Plaintiffs sufficiently allege standing.

Defendants contend that Plaintiffs have not sufficiently alleged standing for their Title VII claims because they "fail to allege how they were personally disadvantaged by any employment decision." Doc. [32] at 24; *see also* Doc. [44] at 14 ("Without facts showing a specific instance . . . they cannot establish standing." (citing *Carpenter v. Bd. of Regents*, 728 F.2d 911, 915 (7th Cir. 1984))). The Court disagrees. Plaintiffs allege with sufficient specificity that their compensation was negatively impacted by discriminatory compensation practices. *See, e.g.*, Doc. [27] ¶¶ 35-36 (alleging that Defendants' allegedly discriminatory compensation practices "caused these [10] white males to be paid more than Plaintiffs Dixon and Gaona" for reasons unrelated to tenure or "any exercise of discretion, skill, or production"); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Defendants cite no case requiring more specificity at the pleading stage than Plaintiffs have provided.

### C. Defendants fail to identify any pleading deficiency sufficient to defeat Plaintiffs' differential treatment or disparate impact claims.

Defendants argue that Plaintiffs' Title VII claims based on disparate treatment must be dismissed because they fail to allege incidents of differential treatment or adverse employment actions. Doc. [32] at 25-27. On review of the Amended Complaint, the Court disagrees. Plaintiffs allege that they were treated differently from comparators due to their membership in

---

includes in his or her complaint. "The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir. 2006), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). None of the contested allegations is the gravamen of a distinct claim that might be subject to dismissal for failure to exhaust, and their relevance to Plaintiffs' Title VII claims will undoubtedly be litigated later at a later stage of the lawsuit. At this stage, the contested "claims" are at worst superfluous allegations, which "do not subject Plaintiff's otherwise well-pleaded claims to dismissal." *Weller v. Textron, Inc.*, 2017 WL 5761597 (M.D. Pa. Nov. 28, 2017).

protected classes. *E.g.*, Doc. [27] ¶¶ 29, 31, 34-40, 85, 89-95, 100-102. And they allege that they suffered adverse employment actions—namely, their compensation and career prospects suffered—as a result of allegedly discriminatory conduct. *See, e.g., id.* ¶¶ 33-37, 43-45, 69, 81; *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage[.]" (internal quotation marks and citations omitted)); *see Tippy v. Humana Marketpoint, Inc.*, 2016 WL 5334667, at *4 (E.D. Ark. Sept. 22, 2016) (Examples [of adverse employment actions] include termination, reduction in compensation, and changes that affect an employee's future career prospects." (citing *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005))). Plaintiffs' allegations of differential treatment and resulting employment disadvantages "raise [their] right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. Therefore, they are sufficient to survive a motion to dismiss. Defendants point to no case in which comparable allegations were found wanting on a motion to dismiss standard.

Defendants also argue that Plaintiffs fail to plead a disparate impact claim, because they "do not identify a facially neutral practice, or allege statistical evidence showing that such a practice results in a relevant disparity . . . ." Doc. [32] at 27. Again, the Court disagrees. Plaintiffs allege that Edward Jones's facially neutral "asset and office sharing plans" have "consistently and disproportionately benefited white male FAs to the exclusion of female and diverse FAs." Doc. [27] ¶¶ 30-31; *see also id.* ¶¶ 32-38. And assuming statistical evidence is required at the pleading stage—a claim for which Defendants provide no authority—Plaintiffs do provide some. *See, e.g., id.* ¶¶ 35-40; *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) ("Disparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims. At the pleading stage, some basic allegations of this sort will suffice.").

### III. 42 U.S.C. § 1981

Finally, Defendants seek dismissal of Plaintiff Gaona's 42 U.S.C. § 1981 claim on the grounds that he fails to plead an adverse employment action, intent to discriminate, or but-for causation. On review of the Amended Complaint, the Court disagrees. As discussed in Section II.C, above, the alleged adverse impacts of discriminatory asset transfers on Plaintiff Gaona's compensation and career prospects are sufficient allegations of adverse employment actions at this early stage. *See* Doc. [27] ¶¶ 32-36; *Rester*, 739 F.3d at 1131. Plaintiff Gaona has also

9

alleged that he was treated differently from similarly situated white employees, which is sufficient to support an inference of racial discrimination.  *See* Doc. [27] ¶¶ 35, 36, 69; *see also supra* Section I; *Nahum v. LMI Aerospace, Inc.*, 2021 WL 2646417, at *3 (E.D. Mo. June 28, 2021) ("One way to demonstrate an inference of racial discrimination in disparate treatment cases is by showing that 'similarly situated employees outside the protected class were treated differently.'" (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012))).  And Gaona's allegations supporting causation are also sufficient for the pleading stage.  *See* Doc. [27] ¶¶ 35-40; *see Smith v. Ouachita Tech. Coll.*, 337 F.3d 1079, 1080 (8th Cir. 2003) (finding far sparser allegations sufficient to state a claim under § 1981).

## Conclusion

Assuming all well-pled allegations to be true and drawing every reasonable inference in favor of Plaintiffs, the Court finds that Defendants have provided no basis for dismissal of any aspect of the Amended Complaint.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [31], is **DENIED**.

**IT IS FURTHER ORDERED** that the stay entered on September 15, 2022, is **LIFTED**.  Doc. [47].  In accordance with Doc. [49], the parties must file a motion requesting a status conference with a revised proposed joint scheduling plan attached **no later than Monday, April 24, 2023**.

Dated this 31st day of March, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE