# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **KATIE DIXON, et al.,** | |
| **Plaintiffs,** | |
| v. | Case No. 4:22-cv-00284 |
| **EDWARD D. JONES & CO., L.P., et al.,** | |
| **Defendants.** | |

## JOINT MOTION REQUESTING TELEPHONIC DISCOVERY DISPUTE CONFERENCE

Katie Dixon and Jaime Gaona, individually and on behalf of all others similarly situated, ("Plaintiffs") and Defendants Edward D. Jones & Co., L.P., and The Jones Financial Companies, L.L.L.P., ("Defendants") (collectively, the "Parties"), respectfully submit this Joint Motion to request a conference on whether Defendants must produce data that reflects (i) commissions and fees earned by Edward Jones ("EDJ") FAs from transitioned client accounts, or (ii) all categories and types of compensation earned by EDJ FAs. The Parties have conferred on this issue several times via letter and phone conferences, and have been unable to reach agreement.

### I. Plaintiffs' Position

Plaintiffs' Second Request for Production No. 4 seeks compensation data for Defendants' field FAs.[1] Consistent with the Parties' compromise regarding asset transfer data (the subject of an earlier discovery dispute, *see* Docs. 65, 69), Plaintiffs have preliminarily agreed to accept FA compensation data for Areas 32, 35, and 8. In response to Request No. 4, Defendants refuse to produce the requested data. Defendants object that the data is "unduly burdensome," "overbroad," and "not relevant." Defendants have stated they will only produce data reflecting commissions generated on transferred assets.

Defendants have failed to articulate any legitimate basis for refusing to produce this relevant and critically important data, and the proposed limitation ignores the theories and scope of this case and Defendants' own affirmative defenses.[2] This case is not only about immediate pay differentials from discriminatory asset transfers, but how that discrimination compounds over time. *See* Doc. 27 at ¶ 8. As the market and transferred assets grow month-to-month, so do the wages of the FAs who received the transfers, resulting in a growing wage disparity that has no tie to skill, merit, or production. *Id.* These issues are made worse by company-wide policies denying income and advancement opportunities to female and diverse FAs. *Id.*

As a result, fulsome compensation data is relevant to Plaintiffs' Equal Pay Act, Section 1981, and Title VII discrimination claims and the associated defenses, and the specific data requested is proportional to the needs of the case. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012) (compelling production of compensation and personnel databases in Title VII discrimination class action). It is also crucial to Plaintiffs', *and Defendants'*, ability to perform meaningful analyses of the asset transfer data and the potential effects of Edward Jones's asset transfer policies on the compensation of female and diverse Financial Advisors. Plaintiffs require complete asset transfer data to:

---

[1] RFP No. 4 ("Computerized and machine-readable databases and reports containing personnel, payroll, and EEO data for Defendants' Financial Advisors…in the United States….").

[2] *See* Doc. 54 at 25 ("**FIRST AFFIRMATIVE DEFENSE**[:] Plaintiff Dixon cannot identify one or more male employees…that were paid more than Plaintiff Dixon").

1

- Meet their burden of establishing an equal pay violation under the EPA. Each piece of the requested data is relevant to this analysis. EEOC's guidance is clear that "[a]ll forms of pay are covered by this law, including salary, overtime pay, bonuses, stock options, profit sharing and bonus plans[.]" *Equal Pay/Compensation Discrimination*, EEOC, https://www.eeoc.gov/equal-paycompensation-discrimination.
- Prove up their Section 1981 and Title VII claims. As with the Equal Pay Act claim, Plaintiffs require the data necessary to establish their claims and prove that Edward Jones's policies harmed them economically. Production of certain limited compensation data narrowly related to specific account transfers is not sufficient: the economic harm resulting from discrimination in these account transfers likely goes beyond the compensation directly associated with account transfers. While Edward Jones may disagree on how Plaintiffs' experts conduct these analyses, it is not permitted to impose its view of the merits and the scope of damages calculations at the discovery stage by withholding relevant and basic compensation data.
Test Defendants' affirmative defenses, including that any pay disparities established are the result of factors other than sex. *See* Doc. 54 at 25-6 (listing Defendants' second, fourth, and fifth affirmative defenses).

### II. Defendants' Position

Plaintiffs' allegations in the Amended Complaint, prior arguments to the Court, and testimony make clear the claims in this case are limited to alleged discrimination in the compensation earned from transitioned client accounts. Plaintiffs' demand for compensation data should be limited to compensation earned on transitioned client accounts.

Different Forms of Compensation. FAs at EDJ earn different forms of compensation. These forms may include, for example, (i) salary, (ii) bonuses for things like bringing new business to the Firm or Firm profitability, and (iii) commissions/fees ("Fees") on accounts they manage, both those they bring new to the Firm and those that are transferred to them.

Plaintiffs Challenge Fees Earned on Transferred Accounts: Plaintiffs challenge only one form of compensation – Fees earned on transferred accounts. For example, in the Complaint Plaintiffs allege "through the Goodknight program, [EDJ] … concentrate[s] assets under management and the corresponding compensation … to the exclusion of female and more diverse FAs. And the wage discrimination compounds over time as those [transitioned] assets grow." ECF 27 ¶ 34.

In response to EDJ's motion to dismiss ("MTD"), Dixon argued she adequately alleged a pay disparity by identifying "ten white male [FAs] with approximately the same tenure and the same responsibilities who Defendants paid more than Ms. Dixon based on the Goodknight transfers they received alone." ECF 42 at 2. Gaona repeated this argument. *Id.* at 22; *see also id.* at 15 (challenging "distribution of assets"); 20 ("Defendants' asset sharing practices disproportionally deny female and diverse FAs the same income"). The Court relied on these allegations of alleged wage disparity from client transitions in denying EDJ's MTD. *See, e.g.*, ECF 51 at 5 (order denying MTD crediting assertions, *e.g.*, "Each of these white male FAs earned more than Plaintiff[] Dixon … based on their Goodknight transfers alone"); *id.* ("These transfers represented tens of thousands of dollars in wages …."); *id.* at 9-10 (same regarding decision not to dismiss § 1981 claim).

Plaintiffs reaffirmed this case is about Fees earned on transferred accounts in their sworn

2

testimony. Dixon testified this case "is about the assets that were given to the people, not their overall compensation which could include compensation from people they get after the fact on their own," Ex. 1, Dixon Dep. 203:4-12, and her "grievance … is that straight white males gave assets that generated compensation disproportionately to other straight white males as opposed to other groups," *id.* 210:17-24. Gaona testified his "basic grievance in the lawsuit is that [EDJ] is not giving either the right kind or right amount of assets to diverse FAs to give them a good foundation to succeed," Ex. 2, Gaona Dep. 194:23-195:5, and claim discrimination "solely related to the failure of [EDJ] to equitably transfer client relationships and assets to [him]," *id.* 233:2-8.

Plaintiffs Already Have Received Data for Fees Generated from Transferred Accounts. Consistent with the above, EDJ produced data sufficient to identify, quantify, and analyze all Client Transition plans that, by prior agreement, began March 9, 2019, for roughly 20 different regions, including all data reflecting Fees generated from each of these plans. This data allows analysis of (1) whether there is a negative disparity in asset transfers, and (2) if so, whether there is a negative disparity in compensation earned from such transferred assets. Furthermore, because EDJ produced *all* Fees from transferred accounts, one can analyze not just the Fees generated at (or close to) the time of transfer, but also the ongoing Fees generated from these transferred assets.

Argument: In employment discrimination cases, courts have recognized that discovery "must be limited to the practices at issue in the case." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005); *see also* Fed. R. Civ. P. 26(b)(1), 2000 Adv. Comm. Notes ("Committee intends that the parties and the court focus on the actual claims and defenses involved in the action"). "Rule 26(b) does not 'allow fishing expeditions in discovery' and … a party must first make a 'threshold showing of relevance' of the evidence requested." *Marlow v. Clarendon*, 78 F.4th 410, 416 (8th Cir. 2023) (citing *Hofer v. Mack Trucks*, 981 F.2d 377, 380 (8th Cir. 1992)). No party is entitled to discovery of irrelevant information. *Jackson v. I.C. Sys.*, 2020 WL 7023945, at *6 (E.D. Mo. Nov. 30, 2020) (Pitlyk, J.) (denying motion to compel certain interrogatories "because Defendant has failed to meet its burden of proving relevance," and noting the burden to show discovery is not proportional only arises "[u]pon a showing by the requesting party that the discovery is relevant.").

Plaintiffs allege white male FAs receive a disproportionate share of transitioned assets, which Plaintiffs characterize as "immediate, ascertainable wages." ECF 27 ¶ 6. Consistent with Plaintiffs' allegations, arguments, and testimony, EDJ already produced data reflecting all Fees generated from transferred accounts (including Fees earned on the account after it was transitioned), which allows the parties to fully evaluate whether there is a disparity in pay for Plaintiffs and their proposed collective and classes *resulting from* disparities in transferred assets.

Plaintiffs nonetheless demand that EDJ produce more "fulsome" and "total compensation" data. Such information is not relevant to this case based on Plaintiffs' allegations, arguments, and sworn testimony, and would only introduce confusion into this dispute. For example, complying with Plaintiffs' request would require the production of data regarding Fees earned on self-generated (and not transferred) accounts, which Plaintiffs explicitly do not dispute. Rather, they both testified this case is only about "the assets that were given to the people" and it is ***not*** about "overall compensation which could include compensation from people they [Plaintiffs and putative class/collective members] get after the fact on their own." Ex. 1 203:4-12; *see also* Ex. 2 233:2-8 (case is "solely related to the failure of [EDJ] to equitably transfer client relationships and assets to [him]"). Because Plaintiffs' claims are limited to alleged pay disparities *resulting from* alleged asset transfer disparities, it is appropriate to limit discovery of compensation data to the fee data resulting from transferred accounts.

3

Dated:  November 20, 2023					Respectfully submitted,

| | |
|---|---|
| **STUEVE SIEGEL HANSON LLP** | **DOWD BENNETT LLP** |
| /s/     *Jordan A. Kane*          | /s/     *James F. Bennett*          |
| George A. Hanson, #43450 (MO) | James F. Bennett MO #46826 |
| Alexander T. Ricke, #65132 (MO) | Michael J. Kuhn MO #58936 |
| Jordan A. Kane, #71028 (MO) | Philip A. Cantwell MO #65505 |
| 460 Nichols Road, Suite 200 | 7676 Forsyth Blvd., Suite 1900 |
| Kansas City, Missouri 64112 | St. Louis, Missouri 63105 |
| Telephone:      816-714-7100 | (314) 889-7300 (telephone) |
| Facsimile:       816-714-7101 | (314) 863-2111 (facsimile) |
| hanson@stuevesiegel.com | jbennett@dowdbennett.com |
| ricke@stuevesiegel.com | mkuhn@dowdbennett.com |
| kane@stuevesiegel.com | pcantwell@dowdbennett.com |
| AND | AND |
| **HF LAW FIRM LLC** | **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.** |
| Christi J. Hilker, #53523 (MO) (*PHV*) | |
| Amy M. Fowler, #52359 (MO) (*PHV*) | Gregg M. Lemley MO #44464 |
| 3101 W. 86th St. | Patrick F. Hulla MO #41745 |
| Leawood, Kansas 66206 | Liz S. Washko (*pro hac vice*) |
| Telephone:      (816)739-0107 | 7700 Bonhomme Ave., Suite 650 |
| Facsimile:       (913)426-9181 | St. Louis, Missouri 63105 |
| christi@hflawfirmllc.com | (314) 802-3935 (telephone) |
| amy@hflawfirmllc.com | gregg.lemley@ogletree.com |
| | patrick.hulla@ogletree.com |
| AND | liz.washko@ogletree.com |
| **OUTTEN & GOLDEN LLP** | *Attorneys for Defendants* |
| Adam T. Klein, #2375012 (NY) (*PHV*) | |
| Nantiya Ruan, #3944006 (NY) (*PHV*) | |
| Chauniqua D. Young, #5138409 (NY) (*PHV*) | |
| Michael C. Danna, #5553169 (NY) (*PHV*) | |
| 685 Third Avenue, 25th Floor | |
| New York, NY 10017 | |
| Telephone: (212) 245-1000 | |
| Facsimile: (646) 509-2060 | |
| atk@outtengolden.com | |
| nr@outtengolden.com | |
| cyoung@outtengolden.com | |
| mdanna@outtengolden.com | |
| *Attorneys for Plaintiffs* | |

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2023, I filed the foregoing notice via the Court's CM/ECF system, effecting service upon all counsel of record.

/s/ Philip A. Cantwell