IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATIE DIXON, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:22-cv-00284 |
| EDWARD D. JONES & CO., L.P., et al., | |
| Defendants. | |

**JOINT MOTION REQUESTING TELEPHONIC DISCOVERY DISPUTE CONFERENCE**

Katie Dixon and Jaime Gaona, individually and on behalf of all others similarly situated, ("Plaintiffs") and Defendants Edward D. Jones & Co., L.P., and The Jones Financial Companies, L.L.L.P., ("Defendants") (collectively, the "Parties"), respectfully submit this Joint Discovery Position Statement to request the Court decide whether the appropriate scope of custodians from Edward Jones's Home Office is Areas 8, 32, and 35, or Region 247.[1] The Parties have conferred on this issue several times via zoom and telephone conferences, and have been unable to reach an agreement.

I. **Plaintiffs' Position**

The Parties previously submitted two Joint Requests for a Discovery Conference on November 20, 2023. Docs. 84-85. Those disputes relate to Edward Jones's refusal to produce full compensation data (as opposed to simply the asset transfer data) for the agreed subset of workers discussed below and, relevant here, Edward Jones's refusal to produce representative ESI custodians "in the field" for Areas 32, 35, and 8. This is important because these are the Areas that (1) Edward Jones has agreed to produce asset transfer data and (some) compensation data for, and (2) Plaintiffs have agreed to test their class theories on before expanding discovery into the remaining Areas nationwide. Refusing to square with these facts, Edward Jones labeled Plaintiffs' request for representative field custodians for Areas 32, 35, and 8 as "irrelevant." *See* Doc. 84 (maintaining, without support, that field custodians "should be limited to EDJ's volunteer leaders in Region 247").

At issue here is Plaintiffs' request for representative custodians from Edward Jones's Home Office (its headquarters) that perform work for Areas 32, 35, and 8. Relevant individuals include those in Edward Jones's "Client Transition Department," that manage the implementation of Edward Jones's asset and office sharing policies. Upon information and belief, many of the

---

[1] On November 20, 2023, the Parties filed a *Joint Motion Requesting Telephonic Discovery Dispute Conference* concerning whether custodial emails must be collected, reviewed, and produced from Edward Jones's regional leadership roles in Region 247, or from a selection of persons outside of Region 247. *See* Dkt. 84. That filing noted that the Parties were conferring about the corresponding scope of home office roles to produce.

1

requested individuals are staffed by Area, not Region. Yet, again, Edward Jones relies on the same unjustified relevance argument, and a wholly unsubstantiated allegation of "burden," to refuse to produce Home Office custodians other than those who performed work for Region 247. How are documents from custodians for Areas 32, 35, and 8 irrelevant to the application of Defendant's asset transfer policies in Areas 32, 35, and 8?

Edward Jones has held the discovery process hostage for months with these positions, putting the schedule in jeopardy. To date, Edward Jones has refused to produce any ESI from even the custodians all Parties agree are appropriate and will likewise not discuss search terms for these agreed custodians. Plaintiffs are entitled to a fair shot at testing their case. Without custodial documents, Plaintiffs' collection of asset transfer data and compensation data from Areas 32, 35, and 8 was a waste of valuable time and resources. Edward Jones's position on these issues is nothing short of an acknowledgment that it led Plaintiffs on a wild goose chase for information it had no intention of allowing Plaintiffs to use.

## II. **Edward Jones's Position**

Plaintiffs continue to press for non-relevant, burdensome custodial discovery from EDJ "home office" employees who Plaintiffs have not pled have any connection to the discrimination Plaintiffs allege occurred in one Edward Jones region (out of more than 300). Given Plaintiffs' allegations, Edward Jones agreed to produce home office custodians who supported FAs in Plaintiffs' region. The Court should reject Plaintiffs' latest demand for home office custodial discovery outside that region, since Plaintiffs make no factual allegations about alleged discrimination outside Region 247. The same types of relevance and burden concerns that justify focusing field-based custodial discovery inside, not outside, Region 247 are incorporated here. *See* Dkt. 84 at 2-3.

**Plaintiffs Focused This Case on Region 247**: This is not Plaintiffs' first attempt to seek discovery unrelated to their unique experiences in Region 247. The parties previously argued whether EDJ must produce nationwide or Region 247-focused client transition data and reports. At that time, EDJ explained that Plaintiffs fail to account for the fact that client relationships transition locally, from one EDJ FA to another near the client. Unlike an FLSA unpaid overtime claim, for example, in which every worker at a nationwide retailer may have been denied overtime under the same nationwide policy, claiming to be excluded from the opportunity to serve an individual client is not "national in the sense that everybody in the country is eligible for the assets," since two different FAs (even in a single region) cannot be transitioned the same client. *See* Ex. 1 at 17:6-18:3. Although the Parties compromised and EDJ agreed to "produce data" and reports for the

2

~20 regions reflecting the three Areas that touched Missouri at the end of 2022 due to the relatively low burden of collecting and producing data, EDJ did not agree to undertake burdensome email collections, reviews, and productions directed at regions outside of 247. Plaintiffs have known this for months.[2] Nor did EDJ agree that producing ~20 regions' worth of data was a stepping stone to nationwide discovery. Throughout, EDJ has worked continuously to progress discovery.

**Edward Jones's Home Office Roles**: Edward Jones serves clients through individual FAs who are in the communities where its clients live and work. Edward Jones makes available to those FAs resources from its "home office" as they serve customers. For example, one resource available to an FA considering initiating a client transition plan is a "Client Transition Consultant." ("CTC"). While Plaintiffs correctly allege that the decision to initiate and select participants in a client transition plan is made by an individual FA according to his or her "unfettered" discretion, Am. Compl. ¶ 31, the FA may also choose to contact a CTC assigned to his or her region to learn how the client transition plans work. Additionally, if the FA decides to initiate a client transition plan, the CTC may assist a branch team while the team's plan is created and implemented. The CTC position, like many other of Edward Jones's home office support roles, is generally responsible for the regions inside dedicated Edward Jones areas.

**Home Office Custodian Discovery**: On top of the more than two dozen field-based custodians that Edward Jones is agreeing to produce that may highlight how individual FAs in Region 247 exercised their "unfettered" discretion to initiate and execute client transitions, EDJ will collect, review, and produce responsive and relevant custodial emails from two groups of home office custodians that will allow Plaintiffs to understand—and test—their claims about Edward Jones's allegedly uniform policies. <u>First</u>, from individuals who led the two "home office" departments that Plaintiffs claim implemented the client transition-related policies they challenge—the Client Transition department (3 custodians), and the compensation department (1 custodian).[3] This group is not in dispute. <u>Second</u>, from relevant support roles responsible for Region 247. Plaintiffs, however, want the second group to include discovery from 20 regions outside of Region 247.

**Argument**: Like the previous disputes, the information from custodians (field, or home office) who were not responsible to the Region in which Plaintiffs worked is irrelevant to their claims about being excluded from client transitions ***in that region***. Neither Plaintiff alleges facts related to any transitions outside of Region 247. Neither alleges that someone in the home office not responsible for supporting Region 247 helped oversee client transitions that allegedly affected them. Neither alleges they were eligible to receive any client transition outside of Region 247. Thus, discovery involving individuals ***outside*** of Region 247 is irrelevant to the individual decision making challenged in Region 247. Edward Jones already is providing material that allows Plaintiffs to examine any connection between individual FAs' decisions to initiate client transitions in Region 247 and the "home office." Expanding support role discovery past Region 247 raises many of the same objectionable costs plaguing Plaintiff's field-custodian position. Dkt. 84 at 2-3.

---

[2] Dkt. 65 at 2 n.2 (prior dispute focused only on data and reports); Dkt. 82 at 1 (notice to Court resolving "dispute concerning the scope of certain data and reports to be produced"); Ex. 2 (agreement to produce data and reports).
[3] Because Edward Jones anticipates that Plaintiffs may seek testimony from the Firm about its general diversity, equity, and inclusion efforts, it has agreed to make the current head of its Enterprise DEI department a custodian.

Dated: December 8, 2023

Respectfully submitted,

| | |
|---|---|
| **STUEVE SIEGEL HANSON LLP** | **DOWD BENNETT LLP** |
| /s/ *Alexander T. Ricke* | /s/ *James F. Bennett* |
| George A. Hanson, #43450 (MO) | James F. Bennett MO #46826 |
| Alexander T. Ricke, #65132 (MO) | Michael J. Kuhn MO #58936 |
| Jordan A. Kane, #71028 (MO) | Philip A. Cantwell MO #65505 |
| 460 Nichols Road, Suite 200 | 7676 Forsyth Blvd., Suite 1900 |
| Kansas City, Missouri 64112 | St. Louis, Missouri 63105 |
| Telephone: 816-714-7100 | (314) 889-7300 (telephone) |
| Facsimile: 816-714-7101 | (314) 863-2111 (facsimile) |
| hanson@stuevesiegel.com | jbennett@dowdbennett.com |
| ricke@stuevesiegel.com | mkuhn@dowdbennett.com |
| kane@stuevesiegel.com | pcantwell@dowdbennett.com |

AND

**HF LAW FIRM LLC**

Christi J. Hilker, #53523 (MO) (*PHV*)
Amy M. Fowler, #52359 (MO) (*PHV*)
3101 W. 86th St.
Leawood, Kansas 66206
Telephone: (816)739-0107
Facsimile: (913)426-9181
christi@hflawfirmllc.com
amy@hflawfirmllc.com

AND

**OUTTEN & GOLDEN LLP**

Adam T. Klein, #2375012 (NY) (*PHV*)
Nantiya Ruan, #3944006 (NY) (*PHV*)
Chauniqua D. Young, #5138409 (NY) (*PHV*)
Michael C. Danna, #5553169 (NY) (*PHV*)
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
atk@outtengolden.com
nr@outtengolden.com
cyoung@outtengolden.com
mdanna@outtengolden.com

AND

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

Gregg M. Lemley MO #44464
Patrick F. Hulla MO #41745
Liz S. Washko (*pro hac vice*)
7700 Bonhomme Ave., Suite 650
St. Louis, Missouri 63105
(314) 802-3935 (telephone)
gregg.lemley@ogletree.com
patrick.hulla@ogletree.com
liz.washko@ogletree.com

*Attorneys for Defendants*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December, 2023, I filed the foregoing notice via the Court's CM/ECF system, effecting service upon all counsel of record.

    /s/ Philip A. Cantwell