**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KATIE DIXON and JAIME GAONA, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br> v. <br><br> EDWARD D. JONES & CO., L.P., and THE EDWARD JONES FINANCIAL COMPANIES, L.L.L.P., <br><br> Defendants. | Case No. 4:22-cv-00284-SEP |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Compel, Doc. [91], and Defendants' Motion for Leave to File Sur-reply, Doc. [110]. For the reasons set forth below, both motions are granted.

### FACTS AND BACKGROUND

Plaintiffs Katie Dixon and Jimmy Gaona allege that Defendants' "Goodknight" program discriminates against women and other minorities in violation of federal antidiscrimination laws. They seek to bring claims on behalf of a class of other minorities who worked as financial advisors (FAs) for Defendants. A more detailed factual background is set forth in the Court's Memorandum and Order dated March 31, 2023, denying Defendants' Motion to Dismiss. *See* Doc. [51]. As discovery has progressed, the parties have repeatedly disagreed over the appropriate scope of class discovery. Defendants want to limit discovery to the geographic region around Kansas City where Plaintiffs worked for Defendants—Region 247. Plaintiffs want nationwide discovery, or at least discovery in Areas 32, 35, and 8, or essentially Missouri.[1] On July 5, 2023, the Court held a discovery conference about the appropriate geographic scope of discovery. *See* Doc. [73]. At the conclusion of the hearing, the Court ordered the parties to meet and confer to see if they could reach an agreement on the appropriate scope. A few weeks later, the parties informed the Court that they had resolved the dispute. *See* Doc. [82].

---

[1] Defendants are organized into "Regions" and "Areas." Areas are made up of regions like states are made up of counties. Defendants have a total of 45 Areas in the United States.

That resolution was short-lived. In November and December of 2023, the parties notified the Court of three disputes related to the geographic scope of discovery. *See* Docs. [84], [85], [86]. Plaintiffs were ordered to "file a single motion to compel addressing the three pending discovery disputes and any other disputes that Plaintiffs anticipate arising, especially any related to the geographic scope of discovery." Doc. [89] at 1. That motion raised two issues:

1. <u>Compensation data</u>. Plaintiffs seek "basic compensation data for Defendants' field FAs, including bonuses, commissions, salaries, assets under management, gross pay, and deferred compensation." Doc. [93] at 11-12.

2. <u>Custodial Documents from FAs</u>. Plaintiffs request Defendants provide documents from a "sampling of custodians" so they can "test their class theories." *Id*. at 16. They argue that they are "entitled to nationwide discovery," but "in good faith agreed to preliminarily test their class theories on three out of forty-five Areas (32, 35, and 8)." *Id*. at 15-16.

Defendants argue that the information Plaintiffs seek is irrelevant at this stage of the case. They also sought leave to file a sur-reply to "correct Plaintiffs' distortion of [their] position and policies, to address Plaintiffs' newly articulated position on 'nationwide' discovery, and to respond to their further arguments regarding the production of additional compensation data." Doc. [113-1] at 2. The Court will consider the arguments in the sur-reply.

## Legal Standard

Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Within that broad scope, Rule 26(b)(2) sets some limits. "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). And a court must limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

2

The party seeking production must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  But once that showing is made, "courts require the party seeking to limit discovery to 'establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Hill v. Auto Owners Ins. Co.*, 2015 WL 1280016, at *7 (D.S.D. Mar. 20, 2015)).

## Discussion

The compensation data and custodial documents Plaintiffs seek are relevant, and because Defendants made no specific showing of a burden, Defendants must produce them.

**I.      Defendants have not shown that the burden of production is disproportionate.**

Defendants' description of the burdens of production is conclusory.  Defendants provided no evidence of the burden of producing compensation data.  "Indeed, at the prior hearing, counsel for Edward Jones expressly stated it was 'not making a burden argument' as to just the data and that 'we can run the data.'" Doc. [96-1] at 10 (quoting Doc. [73] at 32).  Defendants contrast the burden of "discovery from a database that can be relatively easily exported and produced," with the burden of producing the custodial documents, which "requires extensive review efforts prior to production." *Id*. at 17.  But even for the custodial documents, Defendants did not "establish grounds for not providing the discovery that are specific and factual." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Hill v. Auto Owners Ins. Co.*, 2015 WL 1280016, at *7 (D.S.D. Mar. 20, 2015)).  They argue:  (1) "[T]he cost and burden of collection, review, and production of even a sampling of custodial emails from outside Region 247 is objectionable." Doc. [96-1] at 18.  (2) "The additional costs to collect the proposed documents from that expanded set of custodians are real, substantial, and not proportional to the needs of the case." *Id*.  And (3) "Even before any search terms are run, ongoing monthly data hosting costs compound, and Edward Jones must pay for hundreds, if not thousands, of hours of attorney time reviewing those documents from custodians divorced from the factual allegations in the Complaint." *Id*.  Such "conclusory allegations as to undue burden" do not suffice. *Vallejo*, 903 F.3d at 743 (quoting *Hill*, 2015 WL 1280016 at *7).  Therefore, production of the documents hinges on their relevance.

3

## II.     Plaintiffs seek relevant information.

The compensation data and custodial discovery outside Region 247 are relevant and discoverable.

### A. Compensation Data

Plaintiffs seek "basic compensation data for Defendants' field FAs, including bonuses, commissions, salaries, assets under management, gross pay, and deferred compensation." Doc. [93] at 11-12. They have "preliminarily agreed to accept FA data for Areas 32, 35, and 8." *Id*. at 12. Defendants "refuse[ ] to produce any compensation data other than 'the fee data resulting from transferred accounts' ('fee data') for those Areas." *Id*. Plaintiffs argue that data related to FA's total compensation is relevant to class certification. While the Goodknight program deals with transferring accounts to younger FAs, Plaintiffs argue that the effects of Defendants' "discriminatory asset transfer policies reaches beyond the fees generated for recipients of account transfers: because of asset transfers, comparable male or white employees may have been afforded the privilege of bonuses, promotions, commissions, travel rewards, or other benefits while plaintiffs and the putative classes were not." *Id*. at 12-13. Defendants do not concede that any information, including the fee data, for regions other than Region 247 is relevant, but they agreed to produce the fee data for Areas 32, 35, and 8 "solely as a good faith attempt to resolve a pending dispute." Doc. [96-1] at 9. They argue any compensation data other than the fee data for Region 247 is outside the scope of the Complaint. *See id*. at 6-8, 13-15.

Federal Rule of Civil Procedure 26(b) is "is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). And "the standard of relevance in the context of discovery is broader than in the context of admissibility." *Id*. Plaintiffs' request for compensation data for FAs outside of Region 247 clears that low bar.

First, more than just the transfer fee data is relevant. Overall compensation data is relevant for Plaintiffs to "analyze how overall compensation for the putative class is affected by asset transfers." Doc. [104] at 16. And Defendants' argument that Plaintiffs' allegations are "limited to alleged discrimination in the compensation earned from transitioned client accounts" is incorrect. Doc. [96-1] at 14. The Complaint includes multiple allegations related to how Defendants' allegedly discriminatory policies affect overall compensation:

4

> Edward Jones repeatedly and discriminatorily denied Plaintiff Gaona and Plaintiff Dixon asset sharing and advancement opportunities, which negatively impacted their opportunity for overall compensation and career advancement.
>
> The lack of access to Goodknight transfers early in an FA's career severely impairs the FA's income and advancement opportunity moving forward. Edward Jones knows this, which is why in or around 2021, Edward Jones prohibited new FAs from being hired in the Kansas City area absent a substantial Goodknight transfer because the market was too saturated. In other words, Edward Jones recognized that, absent a significant transfer of assets at the beginning of an FA's career, the FA will not succeed.
>
> This problem also compounds overtime. For example, Edward Jones FAs can advance along the company's compensation model allowing for greater income and advancement opportunity as their assets under management increase. But, due to the discriminatory Goodknight transfer program, these greater income and advancement opportunities are denied to female and diverse FAs while being provided to white male FAs.

Doc. [27] ¶¶ 17, 33, 38.

The Court recognized the connection between Goodknight transfers and overall compensation in the order denying Defendants' Motion to Dismiss. *See* Doc. [51] at 1-2 ("Because more junior FAs depend on transfers from senior FAs for their accounts, lack of access to Goodknight transfers in a FA's career can impair the FA's income and advancement opportunity."). In light of those allegations, Defendants' citations to parts of Plaintiffs' depositions in which Plaintiffs seem to focus their claims on asset transfers, not overall compensation, are insufficient to render the overall compensation data irrelevant.

Second, compensation data for FAs outside of Region 247 is relevant to class discovery. Defendants argue along these lines: (1) Plaintiffs have alleged that Defendants give senior FAs "unfettered discretion to assign and share Edward Jones' clients' assets through Goodknight with other FAs of their choice." Doc. [27] ¶ 31. (2) Plaintiffs both worked in Region 247, and the allegations in the Complaint are "exclusive to Region 247." Doc. [96-1] at 5. (3) Discovery outside Region 247 is irrelevant because any discriminatory conduct was the result of the "unfettered" discretion of senior FAs in Region 247 and there is nothing to suggest that similar discrimination is happening in other regions or areas. Defendants believe that "[b]roader discovery is not appropriate where the challenged decisions were made at a local level." *Id*. at 13. To support that argument, Defendants primarily rely on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). There, the Supreme Court overturned "certification of a class comprising about one and a half million plaintiffs, current and former female employees of petitioner Wal-Mart

5

who allege[d] that the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title VII by discriminating against women." *Id*. at 342.  The *Dukes* plaintiffs did not satisfy Rule 23's commonality requirement because "[t]he only corporate policy that the plaintiffs' evidence convincingly establishe[d] [was] Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters." *Id*. at 355.

Plaintiffs will have to contend with *Dukes* when they seek class certification.  But Plaintiffs are entitled to class-related discovery to "develop the record fully before a class motion is considered." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298 (S.D.N.Y. 2012); *see also Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) ("Where . . . the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.").  While Plaintiffs both worked in Region 247, the policies they identified apply nationwide.  For example, the Complaint alleges:

> Edward Jones has tracked the transfer of assets on a month-by-month basis to a granular level of detail.
>
> Edward Jones is organized as a partnership and maintains centralized control through home office leadership that issues company-wide policies and procedures that ultimately apply to FAs and employees in Edward Jones offices nationwide.
>
> Edward Jones has company-wide policies, practices, and procedures that apply to all FAs working in the "the field" in the United States, including policies, practices, and procedures related to compensation, asset sharing opportunities, training, partnerships, assignment of territories, sales support, and business opportunities.
>
> As relevant here, the Goodknight policy is a central, company-wide policy that does not vary from FA to FA—except in discriminatory effect. It is implemented, managed, and maintained by Edward Jones from its central administrative unit and applies with equal force to FAs around the country.

Doc. [27] ¶¶ 7, 12, 28, 137.  And Plaintiffs have now supplied some of those policies to support the allegations in the Complaint.  Those documents show that:  (1) Defendants have some requirements FAs must meet before they can begin the Goodknight program.  *See, e.g.*, Doc. [93-4] at 2; Doc. [93-6] at 2.  (2) Defendants provide resources to guide veteran FAs to help them choose a Goodknight transferee.  *See* Doc. [93-2].  And (3) Defendants have some kind of centralized approval process for transitioning client assets.  *See, e.g.*, Doc. [93-4] at 3; Doc. [93-5] at 2, 3; Doc. [93-16] at 2.  While Defendants argue that Plaintiffs mischaracterize Defendants' policies in their briefing, the Court's own review of the policies confirms at least those three

points.  *See* Doc [96-1] at 10-12; Doc. [113-1] at 2-5.  Plaintiffs' showing that Defendants' policies apply outside of Region 247 is sufficient to warrant broader discovery.

Having determined that Plaintiffs are entitled to discovery outside of Region 247, the question becomes what scope is appropriate.  Plaintiffs' motion requests that "this Court compel Defendants to produce compensation data and representative custodians for Defendants' Areas 32, 35, and 8, if not nationwide." Doc. [93] at 7.  Throughout the motion, Plaintiffs stress that their claims are "nationwide," but they would "test their class theories on a geographic sample before expanding discovery nationwide." *Id*. at 6.[2]  There is no need to kick that can down the road.  Plaintiffs have shown that the data is relevant to class certification, and Defendants have stated that production of the data would not be burdensome.  *See* Doc. [96-1] at 10 (quoting Doc. [73] at 32) ("[A]t the prior hearing, counsel for Edward Jones expressly stated it was 'not making a burden argument' as to just the data and that 'we can run the data.'"); *id.* at 17 ("[D]iscovery from a database . . . can be relatively easily exported and produced . . . .").  That the information is also relevant to the merits does not make it undiscoverable during Phase I.  Class certification is appropriate only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." *Id*. at 351.  To ensure that the Court can conduct a rigorous analysis, Defendants must produce nationwide FA compensation data.

### B.  Custodial Documents

Defendants must produce documents from custodians outside Region 247 for the same reasons they must produce the data:  the documents are relevant, and Defendants failed to make a specific and factual showing of a burden.  Defendants argue that "any sampling of custodians from regions outside of Region 247 is irrelevant to Plaintiffs' claims about being excluded from client transitions ***in Region 247***." Doc. [96-1] at 17.  Plaintiffs' class allegations are not limited to Region 247, and they are entitled to class discovery to help them meet their burden under Rule 23.

---

[2] Defendants' sur-reply argues that Plaintiffs' request for nationwide discovery is "different than what they asked for in their prior position statement and their opening motion" and "not properly at issue before the Court." Doc. [113-1] at 6.  The portions of Plaintiffs' motion quoted above undermine that argument.

7

  Plaintiffs state that, "[i]f Defendants are willing to offer 30 custodians, Plaintiffs will accept 30 custodians or some commensurate number." Doc. [104] at 14. Defendants have not explained why the burden of producing documents for 30 custodians from around the nation is any different from producing documents from 30 custodians in Region 247. Accordingly, the parties must work together to select 30 custodians, whether in or out of Region 247. In anticipation of disputes about which of Defendants' custodians are eligible for selection, the Court will presume—based on Defendants representation about Region 247—the "relevant positions are the regional leader, client transition leader, performance leader, and diversity-focused leaders." *See* Doc. [96-1] at 16 n.9. That does not prevent the parties from agreeing that other positions in Defendants' Home Offices or in the field are more likely to have relevant materials. Production will be completed as set forth in the amended case management order issued this same day.

  Accordingly,

  **IT IS HEREBY ORDERED** that Plaintiffs' Motion to compel, Doc. [91], is **GRANTED**. Defendants must produce the request materials as forth in this Order.

  **IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Sur-reply, Doc. [110], is **GRANTED**.

  Dated this 6th day of September, 2024.

_____<br>
SARAH E. PITLYK<br>
UNITED STATES DISTRICT JUDGE

8